USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1590 UNITED STATES OF AMERICA, Appellee, v. CARLOS JULIO RODRIGUEZ aka Jose Ramirez, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Eileen M. Donoghue, by Appointment of the Court, for appellant. __________________ Robert E. Richardson, Assistant United States Attorney, with whom ____________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ June 17, 1994 ____________________ COFFIN, Senior Circuit Judge. Carlos Julio Rodriguez ______________________ appeals his sentence for illegal reentry into the United States after deportation, 8 U.S.C. 1326. We affirm. I. Factual Background __________________ In April 1991, Rodriguez, a Colombian citizen, was deported from Boston to Colombia. The following September, Rodriguez reentered the United States illegally. On December 19, 1991, agents from the Immigration and Naturalization Service (INS), acting on a tip, found and arrested Rodriguez at a bar in Chelsea, Massachusetts. A federal grand jury subsequently returned a one count indictment charging Rodriguez with a violation of 8 U.S.C. 1326(a) and (b)(2).1 On November 4, 1992, Rodriguez pled guilty to a violation of 8 U.S.C. 1326(a).2 Rodriguez' presentence report (PSR) computed his total offense level at 21: 8 points were assigned as the base offense level under 8 U.S.C. 1326, 16 points were added for his previous conviction for an aggravated felony, and 3 ____________________ 1This statute provides, in pertinent part, that: (a) [A]ny alien who -- (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . [and] (b)(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both. 2At his plea hearing, the court accepted the parties' stipulation to consider Section (b)(2) as a sentencing factor, and not as an element of the offense. We have since affirmed this view. See United States v. Forbes, 16 F.3d 1294, 1300 (1st ___ _____________ ______ Cir. 1994) (holding that Section (b)(2) is a sentence enhancement factor). -2- points were subtracted for acceptance of responsibility and timely notifying authorities of his intention to plead guilty. See U.S.S.G. 2L1.2(a), (b)(2); 3E1.1(b)(2). Taken together ___ with a criminal history category of III, this calculation resulted in a recommended sentencing range of 46-57 months imprisonment and 24-36 months supervised release. The district court accepted the PSR recommendation, finding that Rodriguez' two convictions for possession with intent to distribute an illegal drug, in violation of Mass. Gen. L. ch. 94C 32A, were "aggravated felonies" within the meaning of 1326(b)(2). The court also ruled that Rodriguez' offense occurred when he was found in the United States in December 1991, and, therefore, that application of the November 1991 amendments to the Sentencing Guidelines did not violate the ex post facto __ ____ _____ clause of the Constitution. Accordingly, the court sentenced Rodriguez to 48 months imprisonment, followed by 24 months of supervised release. This appeal followed. Rodriguez contends that his Massachusetts' convictions are not "aggravated" felonies within the meaning of federal law, and that the district court therefore erred by using them to enhance his base offense level by 16 points. He also reiterates his claim that the application of the November 1991 Guidelines to his conviction violates the ex post facto clause, and that he should __ ____ _____ have been sentenced under the Guidelines in effect in September 1991, the date of his reentry into the United States. -3- II. Aggravated Felony Determination _______________________________ Section 1326(b)(2) provides an enhanced penalty for deported aliens who illegally reenter the United States following conviction for an aggravated felony. Our cases establish that a drug offense is an aggravated felony within the meaning of Section 1326 and the applicable Sentencing Guidelines, U.S.S.G. 2L1.2(b)(2), if it is a "drug trafficking crime" as defined in 18 U.S.C. 924(c)(2). See United States v. Forbes, 16 F.3d 1294, ___ _____________ ______ 1301 (1st Cir. 1994); Amaral v. I.N.S., 977 F.2d 33, 35 (1st Cir. ______ ______ 1992). Under that section, a drug felony is a "drug trafficking crime" if it is punishable under any one of three statutes: (1) the Controlled Substances Act, 21 U.S.C. 801 et seq.; (2) the Controlled Substances Import and Export Act, 21 U.S.C. 951 et seq.; or (3) the Maritime Drug Law Enforcement Act, 46 App. U.S.C. 1901 et seq. Rodriguez argues that his state convictions are not aggravated felonies, and therefore not subject to enhancement as such, because they are not for "trafficking" crimes. This argument is meritless. Rodriguez' Massachusetts convictions are trafficking crimes for purposes of Section 1326 because they are punishable under the Controlled Substances Act. See 21 U.S.C. ___ 844(a) (punishing simple possession of controlled substances).3 ____________________ 3Rodriguez also contends that his convictions are not trafficking crimes under state law. This argument misses the mark. We have held that federal, not state, definitions govern under the Guidelines. United States v. Unger, 915 F.2d 759, 762- _____________ _____ 63 (1st Cir. 1990); United States v. Aymelek, 926 F.2d 64, 71-2 _____________ _______ (1st Cir. 1991). -4- See Forbes, 16 F.3d 1294, 1301 (state possession convictions ___ ______ which would be felonies under 21 U.S.C. 844(a) treated as aggravated felonies under U.S.S.G. 2L1.2(b)(2)). Rodriguez argues that this conclusion unfairly converts virtually all predicate drug crimes into aggravated felonies, thus rendering meaningless, for drug offenses, the distinction under Section 1326 and the applicable Guidelines between felonies and aggravated felonies. We recognize that this definition of "aggravated felony" may be rather harsh for drug offenders. We are not at liberty, however, to rewrite the statutory scheme. We therefore conclude that the district court properly added 16 points to Rodriguez' base offense level in computing his sentence under the Guidelines. III. Ex Post Facto Claim ___________________ Rodriguez illegally reentered the United States on September 5, 1991. At that time, the relevant Sentencing Guidelines provided for a base offense level of 8, a 4-level increase "[i]f the defendant previously was deported after sustaining a conviction for a felony," U.S.S.G. 2L1.2 (Nov. 1990), and, if the conviction was for an aggravated felony, "an upward departure may be warranted." Id., comment (n.3). ___ Rodriguez was not found in the United States, however, until December 19, 1991. Between the time of his entry and the time of his arrest, the Guidelines were amended to increase the penalty for a conviction under Section 1326 where deportation followed conviction for an aggravated felony. U.S.S.G. 2L1.2(b)(2) -5- (Nov. 1991). These amendments, effective November 1, 1991, converted the discretionary choice whether to increase the penalty for this class of defendants to a requirement, by instructing the court to add 16 points to the calculation of their total offense level. Id. ___ Rodriguez argues that the district court should have sentenced him under the Guidelines in effect on September 5, 1991, the date he entered the United States, because that is when he violated Section 1326. The district court's application of the November 1991 Guidelines violates the ex post facto clause of __ ____ _____ the Constitution, he claims, because the amendments increase the sentence applicable at the time he committed the crime. The government counters that 8 U.S.C. 1326(a)(2) describes three separate occasions on which a deported alien can commit an offense under the statute: when he or she (1) illegally enters the United States; (2) attempts illegally to enter the United States; or (3) is found in the United States. They point out that the indictment explicitly charged Rodriguez, and he pleaded guilty to, having been found in the United States on December 19, _____ 1991, over a month and a half after the November 1991 Guidelines' amendments.4 Application of these amendments to Rodriguez' ____________________ 4Alternatively, the government urges this court to characterize Section 1326(a) as a continuing offense. Other courts, in discussing the application of the statute of limitations, have come to differing conclusions regarding whether this statute describes a continuing offense. Compare, e.g., _______ ____ United States v. DiSantillo, 615 F.2d 128, 132-37 (3d Cir. 1980) ______________ __________ (crime of illegal entry through recognized Immigration and Naturalization port of entry after being arrested and deported not a continuing offense, so as to toll applicable statute of -6- offense, they contend, therefore does not violate the ex post __ ____ facto clause. _____ Barring any ex post facto concerns, a defendant ordinarily __ ____ _____ should be sentenced according to the Guidelines in effect at the time of sentencing. 18 U.S.C. 3553(a)(4); United States v. _____________ Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990). However, __________ when a guideline amendment increases the punishment imposed, the ex post facto clause of the Constitution prevents retroactive __ ____ _____ application of the guideline to offenses committed prior to the effective date of the amendment. In such a case, the guideline in effect at the time the crime was committed must be used. See ___ U.S. Const. art. I, 9, cl.3; United States v. Molina, 952 F.2d _____________ ______ 14, 522-23 (D.C. Cir. 1992). Determining whether application of the November 1991 Guidelines violated the ex post facto clause __ ____ _____ requires us to decide when Rodriguez committed the offense: when he crossed the border on September 1991, or when he was caught, on December 19, 1991? As the Supreme Court has stated in interpreting a different section of the Immigration and Nationality Act of 1952, "`[t]he cardinal principle of statutory construction is to save and not to destroy.' It is our duty `to give effect, if possible, to every clause and word of a statute.'" United States v. Menasche, _____________ ________ ____________________ limitations for as long as alien remains in the country) with ____ United States v. Bruno, 328 F. Supp. 815, 825 (D. Mo. 1975) ______________ _____ (criminal conduct of being found in the United States after having been excluded and deported continues so long as alien is present in the United States). Because we conclude that Section 1326(a) describes three separate offenses, we need not reach this issue. -7- 348 U.S. 528, 538-39 (1955) (citations omitted). Applying this principle, we think it plain that "enters," "attempts to enter," and "is at any time found in" describe three distinct occasions on which a deported alien can violate Section 1326. The phrase "found in" otherwise would be surplusage, because it would be redundant with "enters." Accord United States v. Whittaker, 999 ______ _____________ _________ F.2d 38, 41-43 (2d Cir. 1993); United States v. Gonzales, 988 _____________ ________ F.2d 16, 18 (5th Cir. 1993); United States v. Alvarez-Quintero, _____________ ________________ 788 F. Supp. 132, 133-34 (D.R.I. 1992). This construction is consistent with the legislative history discussed in United States v. DiSantillo, 615 F.2d 128, 134-35 _____________ __________ (3d Cir. 1980). In DiSantillo, the court noted that when __________ Congress reenacted the statute in 1952, it added the term "found," but did not remove "enters." Id. at 135. In so doing, ___ the court concluded, Congress must have intended to broaden the statute to include the crime committed when an alien enters the United States surreptitiously, of which the INS would have no official record, as well as the crimes committed by entry or attempted entry through regular immigration procedures. There is no other apparent reason for retaining the word "enters." Id. ___ The court was persuaded that the amendment was aimed at ensuring that aliens who were not apprehended as they reentered the country nevertheless could be prosecuted for unlawful entry whenever they were found. See also United States v. Canals- ___ ____ _____________ _______ Jimenez, 943 F.2d 1284, 1286-89 (11th Cir. 1991) (following _______ DiSantillo in concluding that an alien who had sought admission __________ -8- through recognized immigration port of entry, and thus was physically "in" the country, could not be prosecuted under the "found in" clause, because that clause was intended to apply to aliens who have entered surreptitiously). In this case, regardless of when he entered the United States, Rodriguez violated the statute when he was "found" here on December 19, 1991, and he pled guilty to the crime of being "found in" the United States at that time. Accordingly, application of the November 1991 Guidelines in computing his offense level does not violate the ex post facto clause. __ ____ _____ The decision of the district court is therefore AFFIRMED. ________________________________________________________ -9-